## Richard Haaff, by J. J. Haaff, Appellee, v. Rea Hart and B. B. Page, Appellants.

### Gen. No. 6,602.

1. MINES AND MINERALS, § 66*—*what is liability of quarry owners for injuries to pedestrian falling into excavation or unprotected opening.* The owners of a stone quarry cannot make an excavation or leave openings unprotected near a private way devoted to public use, without liability for injuries sustained by pedestrians falling into them.

2. ROADS AND BRIDGES, § 24*—*when existence of public way is question for jury.* Testimony that a well-worn path existed along a fence built around a quarry and that the path was used by the public in general, although contradicted by the defendant's witnesses, equal in number, and partially contradicted by photographs introduced in evidence, is sufficient to warrant leaving the question of the existence of a public way to the jury. *Certiorari* denied by Supreme Court (making opinion final).

Appeal from the Circuit Court of Winnebago county; the Hon. ROBERT K. WELSH, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed April 4, 1919.

FISHER, NORTH, WELSH & LINSCOTT, for appellants.

J. E. GOEMBEL and ROY F. HALL, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

In April, 1916, and for years prior thereto, the appellants, Hart and Page, owned, operated and controlled a stone quarry in the City of Rockford, Illinois. They had a large, deep excavation with a perpendicular wall at their property line, and maintained a fence along the side of it to protect people on the adjoining land from falling over the precipice. For some time prior to April 17, 1916, there was a "v" shaped hole in the ground extending under the fence a little from

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the pit onto the adjoining land. On that day Richard Haaff, the appellee, in the evening, was with a companion going from one point to another in the city walking on the adjoining land near the fence when he fell into that hole and to the bottom of the pit, receiving severe injuries. He was a stranger to the location and did not know of the hole before he fell. He brought this action on the case and had a verdict and judgment of $5,000, from which this appeal is prosecuted. Appellants' counsel say they stand on one proposition: That the court erred in not directing a verdict for the defendants, that under the evidence there is no liability, and the case should be reversed without remanding; that they do not care to have it reversed to be retried.

The controlling question to which counsel for both sides principally devote their briefs is whether there had been sufficient public travel along this course to evidence a temporary devotion to public use.

The declaration charged as negligence that the defendants had made an excavation extending west to their property line taking out stone to a depth of 90 feet below the surface of the earth, leaving a perpendicular wall; that there was and had been for a long time on the land of another adjoining said excavation an open way on which there was a path used by the public and by a large number of persons daily for many years, which use was well known to the defendants; that the defendants carelessly failed and neglected to properly guard the west line of the excavation and to properly and safely fence the same so persons using said path would be protected from falling into the excavation; but that the defendants allowed a large hole to become washed from said excavation to and across said open way and path so that one walking upon the path might step into the hole and fall down the west side of the excavation; that said hole had been there for a long time but was not known to the plaintiff. A demurrer to the declaration was

overruled, and the general issue was pleaded.

The court instructed the jury, at the instance of the defendants, that the fact that others had at times passed along the place in question prior to April 17, 1916, did not of itself give the plaintiff the right to do so unless such use by other persons had been so general and of such length of time as to ripen into a permissive public use; that the defendants were under no duty to protect their stone quarry from any person or persons who were idlers, or were there at the time in question for their own private purposes, or to satisfy mere idle curiosity, or for the purpose of loitering; and if the plaintiff was not at the time in question on a pathway or roadway that had previously been used by the public for a path of travel or thoroughfare, they should find the defendants not guilty; that even though the defendants were negligent in permitting the hole to exist, still the plaintiff was bound to exercise ordinary care and caution for his own safety; and if the plaintiff at the time was using the premises not upon a pathway commonly used and which had been used by the public, then the plaintiff assumed all the risk of going and being upon the land which would be occasioned by the hole in question; that no failure on the part of the defendants to prohibit the use of the strip of land in question by the public could be construed as an invitation to the public to use it for a highway; that the burden was on the plaintiff to prove that the strip of land where he was walking was used as a passageway by the public, and that such fact was known or, by the exercise of ordinary care, would have been known to the defendants; that the defendants owed no duty to any persons walking along the land on the west side of the quarry unless the public used the same as a pathway or highway to go back and forth on their lawful business; and the defendants owed no duty to a person who went upon the land in question without invitation or consent, either express or implied, of the owners or occupants of the same; and if

there was no pathway which had for some time been used by the public adjacent to the hole in question, the plaintiff entered upon the premises at his own peril, and there could be no liability on the part of the defendants; that the burden was on the plaintiff to show by a preponderance of the evidence that at the time in question there existed a path which had been open for some period of time to the. use of the public as and for a passageway, and that the public had so used it, and that this fact was known to the defendants, or, by the exercise of ordinary care, would have been known.

The instructions as a whole informed the jury that the strip of land in question could not become a public highway or public place of travel from the mere fact that idlers and trespassers frequented it, but that it might become a place of public travel by continued use by the public in walking along there in passing from one public street to another in the city; that the defendants were under no obligation to make the place safe for trespassers or idlers, but if the property had been for a considerable time used by the public as a path going from one place to another, and the defendants knew that fact, they were under a duty to exercise care not to make it unsafe. There is no complaint that the court erred in giving or refusing instructions, and no claim that the declaration, if proven, does not make a case for the plaintiff. The questions of law are familiar to the profession except perhaps the application of principles to excavations and dangerous places near a private way used by the public. The Appellate Court of the First District said, without citing authorities, in *Pisko v. United Breweries Co.*, 181 Ill. App. 542 : "There is no logical difference between dangerous 'excavations adjoining highways and those adjoining much traveled and commonly used private ways.' " And it adds that the cases cited in the arguments of both parties agree in that position. In speaking of the same subject in a note in 26 L. R. A. 686, the author says if the circumstances have been

such as to amount to a devotion of the property temporarily to the public use, care must be taken not to make it unsafe. "Nothing which amounts to a trap can be placed where the public has been in the habit of resorting." An extensive review of the authorities may be found in that note, and while, as the author suggests, they may not be in entire harmony, we are of the opinion that the law is as indicated by the holdings of the trial court in overruling the demurrer to the declaration and in instructions to the jury. A further discussion and review of the authorities is found in 5 L. R. A. (N. S.) 733, mostly devoted to excavations and obstructions near a public highway; but it is there again noted that where the public passes over private property for a long time with the implied permission of the owner, or those in control of the same, and where it might be said that a portion of the property was temporarily devoted to public use, the owner, or those in control, cannot, without liability, make excavations or leave openings unprotected so close to the line of such way as to render travel thereon unsafe.

A large number of witnesses were called by each party on the question whether there was a path that had been for a long time used by the public along this fence line where appellee was injured. It appears without contradiction that there was another path or road parallel to the one in question and quite a distance from it that could be used and was much used for public travel in going to and from places which might be reached by the use of this route along the fence; that from time to time many people were seen along and near this fence line, but whether idlers and curiosity seekers, or a part of the public using that line for travel in going from place to place, is the question raised in reading all the evidence. If the testimony of appellee's witnesses is believed, that course had for a long time been used by pedestrians in going from one place to another in the city, and

such use was evidenced not only by the fact that people had been seen by the witnesses so traveling, but also there was a marked path worn by the feet of the travelers along that fence line. Appellants' witnesses testified that there was no path visible at that place; that it was not used by the traveling public except as they might go there from motives of curiosity. In short, there was a direct conflict in the evidence, and whether there was a passageway and path at that place depends upon which witnesses are believed. There is little difference in the number testifying on each side of this proposition. If appellee's witnesses are credited, there was a course of public travel there that brought the case within the rule of law fixing liability on appellants for the injury. It clearly was not a condition of testimony warranting the trial court in directing a verdict for the defendants; neither is it a condition of evidence warranting our reversing the case with a finding that the facts are as claimed by appellants. There is no question as to the extent of the injury, or the amount of damages awarded.

Appellants suggest that the evidence does not sustain the allegation of plaintiff's due care for his own safety, but there is no ground for argument that the evidence so far fails as to warrant the trial court's directing a verdict, or this court's reversing without remanding on that ground. Photographs of the situation are in evidence, and when they are considered along with the other testimony on the question of the path there may be some room for contention that the question whether there was general public travel along that line should be submitted to another jury. But as appellants do not desire that, we have only considered whether on this record the judgment should be reversed with a finding of facts; and being of the opinion that it should not and cannot be done, the judgment is affirmed.

*Affirmed.*